UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LUIS ALBERTO BEJERANO AMADOR,

        Petitioner,

v.                                        Case No. 2:26-cv-527-JES-NPM

WARDEN, FLORIDA SOFT SIDE SOUTH, ET
AL.,

        Respondents.

_____

<u>**OPINION AND ORDER**</u>

Before the Court are Petitioner Luis Alberto Bejerano Amador's petition for writ of habeas corpus (Doc. 1), the government's response (Doc. 7), and Bejerano Amador's reply (Doc. 10). For the reasons below, the Court grants the petition to the extent set forth in this Order.

## I. Background

Bejerano Amador is a native and citizen of Cuba who has lived in the United States since May 10, 2022. (Doc. 1 at 3). He was arrested shortly after entry (on May 12, 2022) by a U.S. Customs and Border Protection agent. (Doc. 7 at 2). On May 13, 2022 Bejerano Amador was served with a notice to appear before an immigration judge for a hearing on March 28, 2024. (<u>Id.</u>) On May 14, 2022, Immigration and Customs Enforcement (ICE) ordered Bejerano Amador's release on his own recognizance. (Doc. 7 at 2).

Bejerano Amador's next immigration hearing is set for April 12, 2027.  (Id.)  He has attended all immigration hearings, completed his biometrics processing, and has valid employment authorization. (Id. at 2-3).  Bejerano Amador has no criminal history.  (Id. at 3).

On February 26, 2026, Bejerano Amador was taken into custody by ICE after a routine traffic stop.  (Doc. 1 at 4).  He remains detained at the Florida Soft Side South Detention Center (Alligator Alcatraz) under the mandatory provisions of 8 U.S.C. § 1225(b)(2). (Doc. 7 at 4).  Bejerano Amador now argues, among other things, that he is entitled to a bond hearing under 8 U.S.C. § 1226(a). (Doc. 10 at 11-12).

## II.  Discussion

The core dispute before this Court is whether 8 U.S.C. § 1225(b)(2) or § 1226(a) of the Immigration and Nationality Act ("INA") applies to Bejerano Amador.  The distinction matters because § 1225(b)(2) mandates detention throughout removal proceedings, whereas noncitizens detained under § 1226(a) have the right to a bond hearing before an immigration judge.

Section 1225(b)(1) establishes the procedures for expedited removal.  It allows immigration officers to remove noncitizens "without further hearing or review."  8 U.S.C. § 1225(b)(1)(A)(i). As expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two

2

ways.  First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission." Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48,61 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)).  And "[a]mong that set, only two categories of noncitizens are eligible for expedited removal:  (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.'"  Id. (quoting 8 U.S.C. § 1225(b)(1)(A)(i)-(iii)).

Section 1226 of the INA also "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" Jennings v. Rodriguez, 583 U.S. 281, 289 (2018).  But § 1226 provides additional safeguards, including the right to an individualized bond hearing.  Id. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.")(citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).  Noncitizens already in the country are treated differently than those seeking entry.  As the Supreme Court observed, "our immigration laws have long made a distinction

3

between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.  In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'"  Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953)); see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001)("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  And until recently, DHS has treated aliens—such as Bejerano Amador—already present in the country as detained under § 1226 and entitled to bond hearings.[1]

Respondents argue that, despite having continuously resided in the United States for more than three years, Bejerano Amador is properly detained under section 1225(b).[2]  Indeed, the Court

---

[1] The Government's recent about-face toward mass mandatory detention under § 1225 was blessed by the Board of Immigration Appeals ("BIA") in In re Yajure Hurtado, 29 I.& N. Dec. 216, 229 (B.I.A. 2025).  But the Court owes no deference to the BIA's statutory interpretations.  In 2024, the Supreme Court concluded that "agencies have no special competence in resolving statutory ambiguities. Courts do." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400–01 (2024).  And "[c]ourts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." Id. at 403.

[2] In Patel v. Hardin, No. 2:25-cv-870-JES-NPM (M.D. Fla. Dec. 1, 2025), Respondents argued that the Court lacks jurisdiction to

4

recognizes that in Buenrostro-Mendez v. Bondi, et al.,166 F.4th 494 (5th Cir. 2026), the Fifth Circuit Court of Appeals—the only circuit court to have ruled on the issue thus far—recently concluded that most noncitizens apprehended anywhere in the United States are never eligible for release on bond, no matter how long they have resided inside the United States. This is contrary to the overwhelming majority of district court judges to have considered the issue. See also Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir 2005) (concluding that the government was unlikely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)). This Court respectfully disagrees with the Fifth Circuit's analysis and finds the analysis in Castanon-Nava and the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, Buenrostro-Mendez is not binding precedent in this Court.

The government could have detained Bejerano Amador without a bond hearing when he entered the country in 2022. Instead, they

---

consider this petition and that the petitioner has not properly exhausted his administrative remedies. The Court rejected those arguments in Patel and in scores of other recent cases presenting the same issues. See, e.g., Cetino v. Hardin, No. 2:25-cv-1037-JES-DNF (M.D. Fla. December 12, 2025); Reyes Rodriguez v. Florida Southside Facility, No. 2:25-cv-1012-JES-DNF (M.D. Fla. December 15, 2025). In those cases, the Court was satisfied of its jurisdiction and determined that exhaustion was excused because it would be futile. The Court's reasoning on these issues also applies here.

5

released him on his own recognizance and allowed him to stay for four years before rearresting him. Thus, the Court rejects the government's argument that Bejerano Amador is subject to expedited removal and concludes that Respondents' authority to detain him stems from section 1226(a). As a noncitizen detained under section 1226(a), Bejerano Amador has a right to a bond hearing.

The Court will thus order Respondents to **either** bring Bejerano Amador before an immigration judge for a merit-based § 1226 bond hearing or release him within ten days. At the hearing, the immigration court must make findings as to whether Bejerano Amador is a flight risk or is a danger to the community.[3] The Court is aware that the Executive Office for Immigration Review ("EOIR") is the agency that schedules bond hearings. In other cases, Respondents have claimed they cannot direct the EOIR when to conduct a bond hearing. Regardless, subjecting Bejerano Amador to mandatory detention under § 1225(b)(1) is unlawful. If Respondents are unable to ensure that Bejerano Amador timely receives the

---

[3] In recent cases in the Middle District of Florida—and despite being ordered to do so—the immigration judge has declined to provide a merit-based bond hearing, determining that under Hurtado he had no discretion to issue a bond. See, e.g., Nahadian Fard v. Bondi, et al., No. 6:26-cv-157-GAP-RMN, Doc. 23 (M.D. Fla. Feb. 12, 2026). If the immigration judge in this case reaches the same conclusion or otherwise declines to consider bond, Petitioner must be released.

6

meaningful and thorough bond hearing to which he is entitled under § 1226(a), they must release him.

Accordingly, it is **ORDERED**:

1.  Luis Alberto Bejerano Amador's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.  Within **TEN (10) DAYS** Respondents shall either provide Bejerano Amador with the statutory process required under § 1226—which includes a merit-based bond hearing—or release him under reasonable conditions of supervision.

3.  If Respondents release Bejerano Amador, they shall facilitate his transportation from the detention facility by notifying his counsel when and where he may be collected.

4.  The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 25, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

7